1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

ERNESTO JIMENEZ,

            Plaintiff,

v.

CAROLYN W. COLVIN, Acting
Commissioner of Social Security,

            Defendant.

Case No.: 15cv1111-DMS-MDD

**REPORT AND
RECOMMENDATION ON
CROSS MOTIONS FOR
SUMMARY JUDGMENT**

[ECF NOS. 15, 22]

      Plaintiff Ernesto Jimenez ("Plaintiff") filed this action pursuant to
42 U.S.C. § 405(g) for judicial review of the decision of the
Commissioner of the Social Security Administration ("Commissioner")
denying Plaintiff's second application for a disability and disability
insurance benefits under Title II for supplement security income
payments under Title XVI of the Social Security Act.  Plaintiff moves
the Court for summary judgment reversing the Commissioner and
ordering an award of benefits, or, in the alternative, to remand the case

for further administrative proceedings.  (ECF No. 10).  Defendant has moved for summary judgment affirming the denial of benefits.  (ECF No. 15).

For the reasons expressed herein, the Court recommends that Plaintiff's motion be **GRANTED** and benefits be awarded and Defendant's motion be **DENIED**.

## I. BACKGROUND

Plaintiff alleges that he became disabled on January 1, 2008, due to several medical and mental conditions including a learning disorder, pes planus, bilateral feet, chondromalacia patella of the right knee, Achilles tendonitis of the right ankle and obesity.  (A.R. at 13).[1] Plaintiff's date of birth of August 16, 1983, categorizes him as a younger individual at the time of filing.

A.   Procedural History

On May 26, 2011, Plaintiff filed applications for social security disability insurance and supplemental security income benefits.  (ECF No. 15-1 at 1).  Plaintiff twice continued his hearing due to lack of representation.  (A.R. at 74-89).  On July 12, 2013, Plaintiff appeared via video teleconference from San Diego, California before Administrative Law Judge ("ALJ") Brenton L. Rogozen.  (A.R. at 92). Plaintiff and Vocational Expert ("VE") Linda M. Ferra testified.  (A.R. at 91).

---

[1] "A.R." refers to the Administrative Record filed on May 4, 2015, and is located at ECF No. 8.

15-cv-1111-DMS-MDD

1    On September 10, 2013, the ALJ issued a written decision finding

2  Plaintiff not disabled (A.R. at 22).  Plaintiff appealed and the Appeals

3  Council declined to set aside the ALJ's decision.  (A.R. at 1).

4  Consequently, the ALJ's decision became the final decision of the

5  Commissioner.  (*Id.*).

6    On May 18, 2015, Plaintiff filed a Complaint with this Court

7  seeking judicial review of the Commissioner's decision.  (ECF No. 1).

8  On July 31, 2015, Defendant answered and lodged the administrative

9  record with the Court.  (ECF Nos. 9, 10).  On October 21, 2015, Plaintiff

10 moved for summary judgment.  (ECF No. 15).  On January 6, 2016, the

11 Commissioner cross-moved for summary judgment and responded in

12 opposition to Plaintiff's motion.  (ECF Nos. 20, 22).

13                              II. <u>DISCUSSION</u>

14 A.    <u>Legal Standard</u>

15    The supplemental security income program provides benefits to

16 disabled persons without substantial resources and little income.  42

17 U.S.C. § 1383.  To qualify, a claimant must establish an inability to

18 engage in "substantial gainful activity" because of a "medically

19 determinable physical or mental impairment" that "has lasted or can be

20 expected to last for a continuous period of not less than 12 months."  42

21 U.S.C. § 1383(a)(3)(A).  The disabling impairment must be so severe

22 that, considering age, education, and work experience, the claimant

23 cannot engage in any kind of substantial gainful work that exists in the

24 national economy.  42 U.S.C. § 1383(a)(3)(B).

25

3

The Commissioner makes this assessment through a process of up to five-steps.  First, the claimant must not be engaged in substantial, gainful activity.  20 C.F.R. § 416.920(b).  Second, the claimant must have a "severe" impairment.  20 C.F.R. § 416.920(c).  Third, the medical evidence of the claimant's impairment is compared to a list of impairments that are presumed severe enough to preclude work.  20 C.F.R. § 416.920(d).  If the claimant's impairment meets or is equivalent to the requirements for one of the listed impairments, benefits are awarded.  20 C.F.R. § 416.920(d).  If the claimant's impairment does not meet or is not equivalent to the requirements of a listed impairment, the analysis continues to a fourth and possibly fifth step and considers the claimant's residual functional capacity.  At the fourth step, the claimant's relevant work history is considered along with the claimant's residual functional capacity.  If the claimant can perform the claimant's past relevant work, benefits are denied.  20 C.F.R. § 416.920(e).  At the fifth step, reached if the claimant is found not able to perform the claimant's past relevant work, the issue is whether claimant can perform any other work that exists in the national economy, considering the claimant's age, education, work experience, and residual functional capacity.  If the claimant cannot do other work that exists in the national economy, benefits are awarded.  20 C.F.R. § 416.920(f).

Section 1383(c)(3) of the Social Security Act, through Section 405(g) of the Act, allows unsuccessful applicants to seek judicial review of a final agency decision of the Commissioner.  42 U.S.C. §§ 1383(c)(3),

15-cv-1111-DMS-MDD

405(g).  The scope of judicial review is limited and the Commissioner's denial of benefits "will be disturbed only if it is not supported by substantial evidence or is based on legal error."  *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1988) (quoting *Green v. Heckler*, 803 F.2d 528, 529 (9th Cir. 1986)).

Substantial evidence means "more than a mere scintilla" but less than a preponderance.  *Sandqathe v. Chater*, 108 F.3d 978, 980 (9th Cir. 1997).  "[I]t is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  *Id.* (quoting *Andrews v. Shalala* 53 F.3d 1035, 1039 (9th Cir. 1995)).  The court must consider the record as a whole, weighing both the evidence that supports and detracts from the Commissioner's conclusions.  *Desrosiers v. Secretary of Health & Human Services*, 846 F.2d 573, 576 (9th Cir. 1988).  If the evidence supports more than one rational interpretation, the court must uphold the ALJ's decision.  *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984). When the evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the Secretary."  *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982).

The ALJ has a special duty in social security cases to fully and fairly develop the record in order to make an informed decision on a claimant's entitlement to disability benefits.  *DeLorme v. Sullivan*, 924 F.2d 841, 849 (9th Cir. 1991).  Because disability hearings are not adversarial in nature, the ALJ must "inform himself about the facts relevant to his decision," even if the claimant is represented by counsel. *Id.* (quoting *Heckler v. Campbell*, 461 U.S. 458, 471 n.1 (1983)).

5

15-cv-1111-DMS-MDD

1    Even if a reviewing court finds that substantial evidence supports

2    the ALJ's conclusions, the court must set aside the decision if the ALJ

3    failed to apply the proper legal standards in weighing the evidence and

4    reaching his or her decision. *Benitez v. Califano*, 573 F.2d 653, 655 (9th

5    Cir. 1978). Section 405(g) permits a court to enter a judgment

6    affirming, modifying or reversing the Commissioner's decision. 42 U.S.

7    C. § 405(g). The reviewing court may also remand the matter to the

8    Social Security Administration for further proceedings. *Id.*

9    B.    The ALJ's Decision

10    The ALJ concluded Plaintiff was not disabled, as defined in the

11    Social Security Act, from January 1, 2008, through the date of the ALJ's

12    decision, September 10, 2013. (A.R. at 21).

13    The ALJ found Plaintiff's learning disorder, pes planus, bilateral

14    feet, chondromalacia patella of the right knee, Achilles tendonitis of the

15    right ankle and obesity severe in combination. (A.R. at 13). The ALJ

16    found Plaintiff did not have an impairment or combination of

17    impairments that meets or is medically equivalent to the severity of one

18    of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1

19    (20 C.F.R. 404.1520(d), 404.1525 and 404.1526). (A.R. at 14).

20    Specifically, the ALJ found that Plaintiff's "record contains no medical

21    evidence to support a finding that [Plaintiff] suffers "a major

22    dysfunction of a joint" and "[t]he severity of [Plaintiff's] mental

23    impairment does not meet or medically equal the criteria of listings

24    12.02 and 12.05." (*Id.*).

25

6

1    The ALJ also found that Plaintiff has mild restrictions in daily

2  living activities, moderate difficulties in social functioning, moderate

3  difficulties with regard to concentration, persistence or pace and

4  experienced no episodes of decompensation of extended duration.  (A.R.

5  at 14-15).  Importantly, the ALJ found that "the evidence does not

6  indicate a physical or other mental impairment imposing additional and

7  significant work-related limitation of function."  (A.R. at 16).  The ALJ

8  specified that the claimant has been working regularly since 2002 with

9  satisfactory performance reviews.  (*Id.*).

10   The ALJ found that Plaintiff has the residual functional capacity

11  ("RFC") to "lift and carry 50 pounds occasionally and 25 pounds

12  frequently and is limited to simple repetitive tasks characteristic of

13  unskilled work."  (*Id.*).  Specifically, the ALJ noted that Plaintiff's past

14  work experience illustrates an ability to work.  For example, Plaintiff

15  "worked after his alleged onset date, . . . had earnings at the level of

16  S[ubstantial] G[ainful] A[ctivity] for the period 2003 through 2007 [and]

17  quit working voluntarily due to harassment from his co-workers."  (A.R.

18  at 17).

19   Relying on the record and testimony of Vocational Expert (VE)

20  Ferra, the ALJ found that Plaintiff performed past relevant work long

21  enough for him to learn it at a substantial gainful activity level.  (A.R.

22  at 21).  The ALJ stated that the record reflects that Plaintiff worked as

23  a stocker and a linen folder at the light exertional level within the

24  previous fifteen years.  (*Id.*).  The ALJ concluded that the RFC

25  "contemplates work at the medium exertional level and represents

7

limitations under which the claimant previously performed this work for approximately 10 years." (*Id*.).

The ALJ specifically noted the following to be of particular relevance:

1.  Plaintiff's Statements and Work History

The ALJ found "that [Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible." (A.R. at 16).  The ALJ found Plaintiff's 10-year work history to be indicative of his ability to work.  (A.R. at 17).  Plaintiff "had earnings at the level of S[ubstantial] G[ainful] A[ctivity] for the period of 2003 through 2007," "quit working voluntarily due to harassment from his co-workers," "participated in a work apprenticeship program to assist him in developing work skills," and while enrolled at the program Plaintiff "worked at the Airport Holiday Inn two (2) days per week in the area of housekeeping and laundry." (*Id*.).  The ALJ noted that this "lends support to the conclusion that [Plaintiff] would be able to perform future work amounting to S[ubstantial] G[ainful] A[ctivity]." (*Id*.).

2.  Third Party Function Reports

The ALJ accorded little weight to the third party function reports prepared by Plaintiff's mother, Maria Jiminez, Plaintiff's brother, Alberto Jiminez, and Plaintiff's sister, Maria Savcedo.  (A.R. at 21).  The ALJ concluded that these reports represent "the non-medically trained

8

1   observations of understandably concerned and sympathetic family

2   members." (*Id.*).

3        3.   Kara Anderson, M.A. CCC-SLP

4        The ALJ accorded little weight to speech language pathologist,

5   Kara Anderson. (A.R. at 17).  The ALJ stated that Anderson found

6   Plaintiff to have "severe impairment of his cognitive-linguistic skills

7   accompanied by phonemic paraphasias and word-finding difficulty."

8   (*Id.*).  The ALJ found "the extreme level of severity suggested by []

9   Anderson" inconsistent with Plaintiff's "work history over

10   approximately 10 years." (*Id.*).

11        4.   Ted Shore, Ph.D.

12        The ALJ afforded great weight to consultative examiner Dr.

13   Shore. (*Id.*).  Dr. Shore "performed a complete psychological evaluation

14   including the administration of the Trail Making Test – Part A & B, the

15   Wechsler Adult Intelligence Scale – Third Edition and the Wechsler

16   Memory Scale – Third Edition." (*Id.*).  The ALJ noted that these tests

17   indicated Plaintiff has "a verbal IQ of 65, performance IQ of 67 and full

18   scale IQ of 63." (*Id.*).  Dr. Shore diagnosed Plaintiff with a "learning

19   disorder not otherwise specified (NOS) and mild mental retardation."

20   (*Id.*).  The ALJ took specific note of Dr. Shore's opinion that:

21             This is a 26-year-old Hispanic male whose overall
         cognitive ability falls within the mildly retarded range.
22             He presents with a probable learning disability (he
         cannot read).  Based on today's assessment, he would
23             be able to understand, remember, and carry out short
         simplistic instructions and make basic work decisions
24             without supervision.  His ability to perform detailed

25

9

15-cv-1111-DMS-MDD

and complex tasks is moderate to severely impaired.
His ability to maintain adequate work pace, attention,
and concentration is mildly impaired.  His ability to
interact appropriately with coworkers, supervisors, and
the public is mildly impaired.  His ability to maintain
regular attendance, manage stress, and adapt to
change in a work setting is mildly impaired.  His
ability to manage funds on his own behalf is doubtful.

(*Id.*).

The ALJ then concludes that Dr. Shore's opinion "suggests that
the claimant is capable of work characterized by the performance of
simple repetitive tasks" and that his opinion is "supported by the
objective clinical findings and observations of the consultative
examiner, is consistent with and is well supported by the evidence of
record taken as a whole."  (A.R. at 18).

5.  C. Valette, Ph.D.

The ALJ afforded little weight to examining psychologist Dr.
Valette.  (*Id.*).  The ALJ found Dr. Valette's opinion "internally
inconsistent and less well supported by the evidence of record taken as
a whole." (A.R. at 19).

The ALJ pointed to Dr. Valette's observation that Plaintiff "last
worked in February 2012" for "10 years at the Navy Base Store" where
he "mainly dealt with collecting shopping carts" and "voluntarily quit
due to harassment by other employees who made fun of him because he
needed direction repeated from his supervisor."  (*Id.*).  Regarding
Plaintiff's attitude and behavior, Dr. Valette opined that "he spoke with
a  slight speech impairment, . . . was not very cooperative during the

15-cv-1111-DMS-MDD

1    evaluation, . . . did not appear as though he were putting forth his best

2    effort into the evaluation [and] relied frequently on 'I don't know.'"

3    (*Id.*).  Dr. Valette opined that Petitioner's "poor scores are inconsistent

4    with his adequate presentation and adequate interaction." (*Id.*).  Dr.

5    Valette found a malingering learning disorder, but concluded that this

6    would not "impede his ability to hold down a job," and pointed to his 10

7    years at the Navy Base as support. (A.R. at 19).  Dr. Valette then

8    concluded that "there are no mental restrictions regarding" Plaintiff

9    and that he is "capable of handling his own finances." (*Id.*).

10       The ALJ was not persuaded that Plaintiff's "learning disorder is

11   so de minimis as to support a finding that he has no mental restrictions

12   at all" and particularly disagreed that Plaintiff "can handle his own

13   finances if he were to be awarded benefits." (*Id.*).

14       6.  Douglas Dolnak, DO

15       The ALJ afforded less weight to Dr. Dolnak, who performed a

16   psychological assessment of Plaintiff on May 11, 2012. (*Id.*).  The ALJ

17   noted that Dr. Dolnak's psychological assessment indicates that

18   Plaintiff "presented with a history of depression, irritable mood and

19   complaining of being unable to control his anger with extreme and

20   sudden mood swings." (*Id.*).  Dr. Dolnak indicated that Plaintiff "is

21   alert and normally oriented with slow speech, tangential thought

22   processes, restricted affect, below average intelligence,

23   depressed/anxious/irritable mood, poor recent memory as well as fair

24   judgment and insight." (*Id.*)  The ALJ noted that Dr. Dolnak indicated

25   an "initial diagnosis of bipolor disorder, most recent episode

15-cv-1111-DMS-MDD

unspecified." (*Id.*).  However, the ALJ found Plaintiff's progress notes dated August 10, 2012, October 8, 2012, April 2, 2013 and May 7, 2013 show improvements in mood instability, depression and anger.  (*Id.*).

 7.  Vincent R. Bernabe, M.D.

 The ALJ afforded great weight to Dr. Bernabe, who conducted a consultative examination on August 2, 2011.  (*Id.*).  The ALJ listed Dr. Bernabe's diagnoses of: (1) pes planus, bilateral feet; (2) chondromalacia patella, right knee; (3) patellar tendonitis, right knee; (4) Achilles tendonitis, right ankle; and (5) right foot sprain.  (A.R. at 19-20).  The ALJ found Dr. Bernabe's functional assessment that Plaintiff can push, pull, lift and carry 50 pounds occasionally and 25 pounds frequently, can walk six hours per day, does not need an assistive device, has no sitting limitation restrictions, no postural limitations, no restrictions regarding agility, no hearing and seeing restrictions and no restrictions for fine and gross manipulative movements well supported by the record evidence as a whole.  (A.R. at 20).

C. <u>Issues on Appeal</u>

 Plaintiff argues that the ALJ erred by: (1) finding that he did not meet the requirements of Listing 12.05(C); (2) listing an RFC unsupported by substantial evidence; (3) finding his testimony not credible; (4) improperly rejecting the third party opinions of Maria Jimenez, Alberto Jimenez and Maria Savcedo; and (5) improperly analyzing Plaintiff's past relevant work and substantial gainful activity. (ECF No. 15).  In light of the Court's ruling on the first issue, it is unnecessary to address the remaining four issues.

15-cv-1111-DMS-MDD

1       1.  Intellectual Disability Requirements of 12.05(C)

2       Plaintiff contends that the ALJ's finding that Plaintiff's learning

3   disability does not meet the requirements of Listing 12.05(C) lacks

4   substantial evidence in support.  (ECF No. 15-1 at 11).  Plaintiff states

5   the ALJ's finding that "the evidence does not indicate a physical or

6   other mental impairment imposing additional significant work-related

7   limitation of function" is clear error because the ALJ found six severe

8   impairments (1) learning disorder; (2) pes planus; (3) bilateral feet; (4)

9   chondromalacia patella of the right knee; (5) Achilles tendonitis of the

10  right ankle; and (6) obesity.  (*Id.* at 13).  Plaintiff explains that his RFC

11  restricts him to medium work, which along with his learning disability

12  satisfies the criteria in listing 12.05(C).  (*Id.* at 14).  Plaintiff also

13  asserts that the ALJ's finding of a severe impairment of obesity satisfies

14  the criteria for a physical impairment imposing an additional and

15  significant work-related limitation on its own.  (*Id.*).

16      Defendant counters that Plaintiff's regular work since 2002 with

17  satisfactory performance reviews "supports a conclusion that Plaintiff's

18  mental impairment did not preclude gainful competitive employment

19  and, therefore, Plaintiff did not suffer from significantly sub-average

20  general functioning with deficits in adaptive functioning."  (ECF No. 22

21  at 4).  Specifically, Defendant asserts that the ALJ "was entitled to rely

22  on Dr. Valette's analysis" that Plaintiff "had no mental restrictions that

23  would impede his ability to hold down a job" and "was entitled to rely on

24  [Dr. Bernabe's functional assessment] analysis to conclude that Plaintiff

25

did not have a significant physical impairment sufficient to meet the criteria of Listing 12.05[(C)]." (*Id.* at 4-5).

Plaintiff is disabled under Listing 12.05(C) if he can demonstrate: "(1) sub-average intellectual functioning deficits in adaptive functioning initially manifested before age 22; (2) an IQ score of 60 to 70; and (3) a physical or other mental impairment causing an additional and significant work-related limitation." *Kennedy v. Covlin,* 738 F.3d 1172, 1176 (9th Cir. 2013).[2]

The ALJ stated the following in determining that Plaintiff's impairments did not meet the requirements of Listing 12.05(C):

> [T]he "paragraph C" criteria of listing 12.05 are not met because the claimant does not have a valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. While the claimant has verbal, performance, or full scale IQ of 60 to 70, the evidence does not indicate a physical or other mental impairment imposing additional and significant work-related limitation of function. Indeed, the claimant has been working regularly since 2002 with satisfactory performance reviews.

[2] Paragraph 12.05 contains an introductory element that the plaintiff have "significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; i.e., the evidence demonstrates or supports onset of the impairment before age 22." 20 C.F.R. pt. 404, subpt. P, app. 1 § 12.05. Paragraph (C) requires two additional elements: "[a] valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function. *Id.* Thus, the third prong in *Kennedy* is the second prong in 12.05(C).

15-cv-1111-DMS-MDD

1  (A.R. at 16).

2      Plaintiff's intellectual functioning deficits in adaptive function

3  initially manifested before Plaintiff turned 11.  (A.R. at 379).  This

4  satisfies the first prong of 12.05(C).  A review of the record evidence

5  shows that Plaintiff satisfied the second prong of 12.05(C) because his

6  verbal IQ was 65, his performance IQ was 67 and his full scale IQ was

7  63.  (A.R. at 404).  Plaintiff contends that the third requirement of the

8  Listing 12.05(C) *Kennedy* test is also satisfied because the ALJ found a

9  severe combination of six impairments.  (ECF No. 15-1 at 13).

10      At step 2 of the sequential process the ALJ found that Plaintiff

11  "has the following severe combination of impairments: learning

12  disorder, pes planus, bilateral feet, chondromalacia patella of the right

13  knee, Achilles tendonitis of the right ankle and obesity (20 CFR

14  404.1520(c) and 416.920(c))."  (A.R. at 13).  The ALJ explained that

15  "[t]hese impairments are established by the medical evidence and are

16  'severe' within the meaning of the Regulations because they are more

17  than a slight abnormality or combination of abnormalities that cause

18  the claimant more than minimal functional limitations."  (A.R. at 14).

19      "The definition of a severe impairment under section 404.1520(c)

20  closely parallels that portion of section 12.05(C) of Appendix 1 which

21  requires a showing of a physical or other mental impairment imposing

22  additional and significant work-related limitation of function."

23  *Edwards v. Heckler*, 736 F.2d 625 (11th Cir. 1984).  As such, the ALJ's

24  finding of "a severe physical or other mental impairment [or

25  combination of impairments], as defined at step two of the disability

analysis, apart from the decreased intellectual function, meets the [third] prong of the § 12.05(C) listing." *Beaupre v. Astrue*, No. CIV S-11-0459 GGH, 2012 U.S. Dist. LEXIS 58099, 2012 WL 1435032, *19 (E.D. Cal. April 25, 2012); *see* 20 C.F.R. § 404.1520(a) ("[W]e also consider the medical severity of your impairment(s).  If you have an impairment(s) that meets or equals one of our listings in appendix 1 of this subpart and meets the duration requirement, we will find that you are disabled.").

The Ninth Circuit has held that "a person who has a severe physical or other mental impairment, as defined at step two of the disability analysis, *apart from the decreased intellectual function*, meets the [third] prong of the §12.05(C) listing." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987).  As noted herein, the ALJ found that Plaintiff's combination of severe impairments, including his learning disability, did not qualify as a severe physical or other mental impairment under 12.05(C).  (A.R. at 16).  However, it is clear that:

> [a] learning disability is an impairment in its own right, distinct from mental retardation, and the Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition, Text Revision ("DSM-IV-TR") has separate diagnoses for Learning Disorder and Mental Retardation.  It stands to reason that a learning disorder can exist even in the presence of a primary diagnosis of mental retardation, and thus may satisfy the [third] prong of § 12.05(C).

*Kennerson v. Astrue*, No. 10-CV-6591(MAT), 2012 U.S. Dist. LEXIS 109158, 2012 WL 3204055, *29 (W.D.N.Y. Aug. 32, 2012) (internal citations omitted).  Additionally, Plaintiff's learning disability does not

1    render the ALJ's determination of his severe combination of

2    impairments inapplicable to Listing 12.05(C) because "it is plain that

3    mental retardation is different from a learning disorder." *Williams v.*

4    *Astrue*, No. 07CIV4134JGK, 2008 U.S. Dist. LEXIS 86779, 2008 WL

5    4755348, *10 (S.D.N.Y. Oct. 27, 2008); *see Beaupre*, 2012 U.S. Dist.

6    LEXIS 58099, 2012 WL 1435032, at *21 (finding that the plaintiff's

7    severe impairment was his learning disability, but that 12.05(C) is not

8    met because his IQ was above 70); *see also Robinson v. Comm'r of Soc.*

9    *Sec.*, No. 2:14-cv-0051-KJN, 2015 U.S. Dist. LEXIS 26032, 2015 WL

10   925609, * 16 (E.D. Cal. March 3, 2015) (finding that Plaintiff's learning

11   disability did not satisfy § 12.05(C) because the ALJ did not find it or

12   other combined impairments severe).

13        Some courts have found some learning disorders are not an

14   additional impairment, but rather a symptom or manifestation of

15   mental retardation.  *See Buckner v. Apfel*, 213 F.3d 1006, 1012 (8th Cir.

16   2000).  To determine whether Plaintiff's learning disability is an

17   additional impairment apart from the decreased intellectual function,

18   "the Court must look to testimony to decide whether it is medically

19   considered a separate disability from mental retardation." *Michael v.*

20   *Apfel*, No. C-99-3936-CRB, 2000 U.S. Dist. LEXIS 10070, 2000 WL

21   10006534, *13 (N.D. Cal. 2000).

22        Dr. Shore, whom the ALJ afforded great weight, listed Plaintiff's

23   mild mental retardation as a separate impairment from his learning

24   disorder.  (A.R. at 405).  On November 30, 2009 Dr. Shore conducted a

25   complete psychological evaluation of Plaintiff.  (A.R. at 401).  Under

15-cv-1111-DMS-MDD

present illnesses, Dr. Shore noted that Plaintiff "is applying for disability benefits due to a learning disability." (*Id.*).  After Plaintiff completed the psychological evaluation and took The Trail Making Test – Part A & B, The Wechsler Adult Intelligence Scale – Third Edition and The Wechsler Memory Scale – Third Edition Dr. Shore concluded that Plaintiff's "overall cognitive ability appears to be within the mildly retarded range." (A.R. at 405).  He then found Plaintiff's probable DSM-IV diagnoses are as follows:

AXIS I:     Learning Disorder, NOS
AXIS II:    Mental Retardation (Mild)
AXIS III:   Deferred
AXIS IV:    Inability to read
AXIS V:     GAF 68

(*Id.*).  This constitutes the necessary medical evidence to show that Plaintiff's learning disorder is a separate disability from his mental retardation.

The ALJ's reliance on Plaintiff's work experience is similarly inapplicable to the ALJ's determination of disability under Listing 12.05(C).  *Fanning*, 827 F.2d. at 634 ("If Fanning suffers from the impairment listed in section 12.05(C), and the impairment meets the 12 month duration requirement specified by statute, he must be found disabled without consideration of his age, education, and work experience.") (internal citations omitted).  Where the impairment on its own is non-disabling, the Court must determine whether it imposes additional and significant work-related limitation of function.  *See Michael*, 2000 U.S. Dist. LEXIS 10070, at *13 ("Plaintiff argues that his

18

reading disorder satisfies the requirement of an 'additional impairment' in the listing because, although it is not in and of itself disabling, non-disabling conditions can meet listing 12.05(C).").  Here, Plaintiff's combination of six impairments was found to be severe, effecting his ability to perform basic work activities in more than a slight or minimal way.  (A.R. at 13-14); *See Fanning*, 827 F.2d at 633 (stating that the additional impairment satisfies the 12.05(C) requirement when "its effect on a claimant's ability to perform basic work activities is more than slight or minimal.").  The fact that Plaintiff worked regularly since 2002 with satisfactory performance reviews does not render Plaintiff non-disabled.  *Id.*; (A.R. at 16).[3]

---

[3] There is also evidence that supports Plaintiff's past employment as benevolent, which also decreases the indicia of reliability of Plaintiff's work experience.  In an exchange between the ALJ and the VE, the ALJ posed the following hypothetical:

> Q [by the ALJ]: . . . [W]hat would your reaction be if you found out that over a course of 10 years, an employee had been written up 20 times, but had not been fired?
> A [by the VE]:  I would say that it's consistent with the testimony I heard that his mother was involved in getting him the job, and he was in what's called a benevolent situation where the employer was giving him an unusually larger number of chances.

(A.R. at 115-16); *see Lynch v. Colvin*, No. 2:13-cv-01855-CKD, 2014 U.S. Dist. LEXIS 12877, 2014 WL 4370676, *21-22 (E.D. Cal. 2014) (finding the ALJ erred in failing to determine whether the plaintiff's employment was benevolent because his father is an executive at the company and the plaintiff may have received special assistance and been held to a lower productivity standard).

19

1    In conclusion, Plaintiff's sub-average intellectual functioning with

2    deficits in adaptive functioning manifested before Plaintiff turned 11,

3    Plaintiff has an IQ score between 60 and 70 and Plaintiff has a severe

4    combination of impairments causing additional and significant work-

5    related limitation.  (A.R. at 404, 379, 13); *see Luckey v. U.S. Dep't of*

6    *Health & Human Services*, 890 F.2d 666, 669 (4th Cir. 1989) ("The

7    Secretary's finding that Luckey suffers from a severe combination of

8    impairments also established the [third] prong of 12.05(C).").  Plaintiff

9    satisfies Listing 12.05(C) and is disabled.  The ALJ erred in his

10   determination that Plaintiff's other mental and physical impairments,

11   including Plaintiff's learning disorder, were not sufficiently severe to

12   warrant a finding that Plaintiff met or equaled Listing 12.05(C).

13        2.  Remand v. Reversal

14        Remanding for further proceedings or simply awarding benefits "is

15   within the discretion of [the] court."  *McAllister v. Sullivan*, 888 F.2d

16   599, 603 (9th Cir. 1989).  "If additional proceedings can remedy defects

17   in the original administrative proceedings, a social security case should

18   be remanded.  Where, however, a rehearing would simply delay receipt

19   of benefits, reversal is appropriate."  *Lewin v. Schweicker*, 654 F.2d 631,

20   635 (9th Cir. 1981)  "More specifically, the district court should credit

21   evidence that was rejected during the administrative process and

22   remand for an immediate award of benefits if (1) the ALJ failed to

23   provide legally sufficient reasons for rejecting the evidence; (2) there are

24   no outstanding issues that must be resolved before a determination of

25   disability can be made; and (3) it is clear from the record that the ALJ

15-cv-1111-DMS-MDD

1  would be required to find the [Plaintiff] disabled were such evidence
2  credited." *Benecke v. Barnhart*, 379 F.3d 587, 593 (9th Cir. 2004) (citing
3  *Harman v. Apfel*, 211 F.3d 1172, 1178 (9th Cir. 2000).

4      As discussed above, the ALJ erroneously concluded that Plaintiff
5  did not satisfy the requirements of Listing 12.05(C).  Further, it is clear
6  from the record that Plaintiff must be found disabled at step three
7  because he meets the requirements of Listing 12.05(C).  As such, there
8  are no outstanding issues that must be resolved before a determination
9  of disability can be made.  Additional proceedings would serve no useful
10  purpose.  *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995).
11  Accordingly, the Court concludes that the proper remedy is a remand
12  for the payment of benefits.  Plaintiff's other assignments of error are
13  not addressed as moot.

## IV.   CONCLUSION

14
15      The Court **RECOMMENDS** that Plaintiff's Motion be
16  **GRANTED** and that Defendant's Motion be **DENIED**, and the case be
17  **REMANDED** for an award of benefits.  This Report and
18  Recommendation of the undersigned Magistrate Judge is submitted to
19  the United States District Judge assigned to this case, pursuant to the
20  provisions of 28 U.S.C. § 636(b)(1).

21      **IT IS HEREBY ORDERED** that any written objections to this
22  Report must be filed with the Court and served on all parties no later
23  than **March 22, 2016**.  The document should be captioned "Objections
24  to the Report and Recommendation."

25      **IT IS FURTHER ORDERED** that any reply to the objections

15-cv-1111-DMS-MDD

1  shall be filed with the Court and served on all parties no later than

2  **March 29, 2016**. The parties are advised that failure to file objections

3  within the specified time may waive the right to raise those objections

4  on appeal of the Court's order. *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir.

5  1991).

6  Dated:  **March 7, 2016**

7

8  Hon. Mitchell D. Dembin
   United States Magistrate Judge

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

15-cv-1111-DMS-MDD