1
2
3
4
5
6
7

## UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF CALIFORNIA

8

| | |
|---|---|
| ERNESTO JIMENEZ, | Case No. 15-cv-1111 DMS (MDD) |
| Plaintiff, | **ORDER (1) GRANTING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT, AND (2) DENYING DEFENDANT'S CROSS-MOTION FOR SUMMARY JUDGMENT** |
| v. | |
| CAROLYN W. COLVIN, Acting Commissioner of Social Security, | |
| Defendant. | |

16    This case comes before the Court on Plaintiff Ernesto Jimenez's motion for

17  summary judgment and Defendant Acting Commissioner Carolyn Colvin's cross-

18  motion for summary judgment. The case was referred to Magistrate Judge Mitchell

19  D. Dembin ("Magistrate Judge") for a Report and Recommendation ("R&R"). The

20  Magistrate Judge recommended that the Court grant Plaintiff's motion and deny

21  Defendant's motion. Defendant thereafter objected to portions of the R&R. Having

22  reviewed and considered the objections, the Court overrules them, adopts the R&R,

23  and grants Plaintiff's motion for summary judgment and denies Defendant's cross-

24  motion.

25                                    I.

26                              BACKGROUND

27    Plaintiff alleged that he became disabled on January 1, 2008, as a result of

28  several medical and mental conditions that Administrative Law Judge Brenton L.

Rogozen ("ALJ") categorized as severe. Administrative Record ("AR") 13, 92. In 2009, when Plaintiff was 26 years old, his examining physician, Dr. Ted Shore, found that Plaintiff had a full scale IQ of 63, a verbal IQ of 65, a performance IQ of 67, and diagnosed him with a learning disorder and mild mental retardation.[1] AR 17. Dr. Shore noted that Plaintiff was capable of work involving simple repetitive tasks. *Id.* The ALJ credited Dr. Shore's report because it was supported by objective findings, observations of the consultative examiner, and the record as a whole. AR 18. In 2011, Plaintiff's orthopedic surgeon, Dr. Vincent R. Bernabe, diagnosed Plaintiff with bilateral pes planus ("flatfoot"), chondromalacia patella of the right knee, patellar tendonitis of the right knee, Achilles tendonitis of the right knee, and a right foot sprain. AR 19–20. Dr. Bernabe determined that Plaintiff was limited to pushing, pulling, lifting and carrying 50 pounds occasionally and 25 pounds frequently. AR at 20. Dr. Bernabe also found that Plaintiff could walk and stand for six hours per day. *Id.* The ALJ credited Dr. Bernabe's assessment because it was supported by objective findings, determinations of the consultative examiner, and the record as a whole. *Id.* In January 2013, Plaintiff's examining psychologist, Dr. C. Valette, reported that Plaintiff was malingering and concluded that although Plaintiff's history indicated a learning disorder, that disorder would not impede his ability to work. AR 18–19. The ALJ accorded Dr. Valette's opinion "little weight" because it was internally inconsistent and unsupported by the record. *Id.* The ALJ pointed out that Dr. Valette diagnosed a learning disorder but assigned no restriction. *Id.* The ALJ did not believe Plaintiff's disorder was so *de minimis* as to support a finding that he has no mental restrictions. *Id.*

_____

[1] The terminology characterizing intellectual disability has recently evolved. The term presently used by the American Psychiatric Association's Diagnostic and Statistical Manual's fifth edition ("DSM-V") is intellectual developmental disorder. The disorder was formally referred to as mental retardation in the fourth edition ("DSM-IV"), as well as in previous editions. Because most previous cases and the record herein employ the latter term, that terminology will be used in this Order.

On September 10, 2013, the ALJ issued a written decision. AR 22. In the ALJ's report, he conducted a five-step sequential evaluation of Plaintiff.[2] AR 13 (citing C.F.R. §§ 404.1520(a) and 416.920(a)).  At step one, the ALJ concluded that Plaintiff had not engaged in substantially gainful activity since claiming disability. *Id.* At step two, the ALJ concluded that Plaintiff's physical impairments combined with Plaintiff's learning disorder were severe within the meaning of the regulations. AR 13–14. At step three, the ALJ determined that Plaintiff did not meet the requirements of Listing 12.05(C) because, though Plaintiff's IQ fell between 60 and 70, the evidence did not indicate a physical or other mental impairment imposing an additional and significant work-related limitation. AR 16. The ALJ did not address whether Plaintiff's subaverage intellectual functioning arose during Plaintiff's developmental period. *Id.* At step four, the ALJ determined that Plaintiff had the residual functioning capacity to perform his past relevant work. AR 21. Since the ALJ determined that Plaintiff was not disabled at step four, he did not reach step five. Based on his findings, the ALJ concluded that Plaintiff was not disabled. AR 22. Plaintiff appealed, and the Appeals Council declined to set aside the ALJ's decision, rendering it the final decision of the Commissioner. AR 1.

---

[2]. To determine whether a plaintiff is disabled, the Social Security Administration regulations provide a five-step sequential process. The five steps of the inquiry are: (1) Is the plaintiff presently working in a substantially gainful activity? If so, the plaintiff is not disabled within the meaning of the Social Security Act. If not, proceed to step two. (2) Is the plaintiff's impairment severe? If so, proceed to step three. If not, the plaintiff is not disabled. (3) Does the impairment "meet or equal" one of a list of specific impairments described in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the plaintiff is disabled. If not, proceed to step four. (4) Is the plaintiff able to do any work that he or she has done in the past? If so, the plaintiff is not disabled. If not, proceed to step five. (5) Is the plaintiff able to do any other work? If so, the plaintiff is not disabled. If not, the plaintiff is disabled. *Bustamante v. Massanari*, 262 F.3d 949, 953–954 (9th Cir. 2001). The plaintiff maintains the burden of proof for steps one through four. Should an inquiry proceed to step five, the burden shifts to the Commissioner.

On May 18, 2015, Plaintiff filed the subject Complaint. Defendant answered, and thereafter the parties filed cross-motions for summary judgment. On March 7, 2016, the Magistrate Judge filed the R&R advising that the Court grant Plaintiff's motion, deny Defendant's motion, and remand the case for an award of benefits. R&R at 21. Defendant timely filed an objection to the R&R, and Plaintiff replied.

## II.

## DISCUSSION

A.   *Legal Standard*

Disability is defined by the Social Security Act as the "inability to engage in any substantially gainful activity … by reason of any medically determinable physical or mental impairment … which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The impairment must prevent the claimant, given age, experience, and work experience, from engaging in substantially gainful activity that exists in the national economy. 42 U.S.C. § 423(d)(2)(A).

The Secretary's decision "will be disturbed only if it is not supported by substantial evidence or it is based on legal error." *Magallenes v. Bowen*, 881 F.2d 747, 750 (9th Cir. 1989) (quoting *Brawner v. Secretary of Health & Human Services*, 839 F.2d 432, 433 (9th Cir. 1987)). Substantial evidence is such that a reasonable mind might accept as adequate to support a conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 217 (1938)). It is more than a scintilla but less than a preponderance. *Sorenson v. Weinberger*, 514 F.2d 1112, 1119 n. 10 (9th Cir. 1975). The reviewing court must examine whether there is substantial evidence to support the agency's findings on the record as a whole. *DID Bldg. Svcs., Inc. v. NLRB*, 915 F.2d 490, 494 (9th Cir. 1990) (citing *Universal Camera Corp v. NLRB*, 340 U.S. 474, 491 (1951)). The court may not affirm simply by isolating a specific quantum of supporting evidence. *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). Where the evidence is

susceptible to multiple rational interpretations, the ALJ's rational interpretation will be upheld. *See Gallant v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984). When evidence is inconclusive, "questions of credibility and resolution of conflicts in the testimony are functions solely of the secretary." *Sample v. Schweiker*, 694 F.2d 639, 642 (9th Cir. 1982). A court may enter judgment affirming, modifying, remanding, or reversing the Commissioner's decision. 42 U.S.C. § 405(g).

B.   *Analysis*

Plaintiff argues the ALJ erred by finding that he did not meet the requirements of Listing 12.05, subd. (C), and requests that the Court remand for an award of benefits.[3] Pl.'s Mot. Summ. J. at 11:16, 24:8. Listing 12.05 addresses mental retardation.  Mental retardation refers to significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period; *i.e.*, the evidence demonstrates or supports onset of the impairment before age 22.  20 C.F.R., Part 404, Subpt. P, App. 1 § 12.05 (2012). Relevant here, Listing 12.05, subd. (C), provides that the required severity of this disorder is met when the plaintiff can show: "A valid verbal, performance, or full scale IQ of 60 through 70 and a physical or other mental impairment imposing an additional and significant work-related limitation of function[.]"  A claimant will meet the listing for mental retardation only if his "impairment satisfies the diagnostic criteria in the introductory paragraph" of the Listing as well as one of the four subdivisions of 12.05(A)–(D).  20 C.F.R. Pt. 404, Subpt. P, App. I § 12.00(A).  Thus, to establish a disability at the third step of the sequential evaluation through Listing

---

[3]   At the third step of the sequential evaluation, "a claimant's impairment or combination of impairments is medically equivalent to a listed impairment— establishing a disability and ending the five-step inquiry—if the claimant's impairment or combination of impairments 'is at least equal in severity and duration to the criteria of any listed impairment.'"  *Kennedy v. Covin*, 738 F.3d 1172, 1175 (9th Cir. 2013).  Thus, if the criteria of Listing 12.05 are met, the claimant's disability is established.

12.05, Plaintiff must show that the following three prongs are satisfied: "(1) subaverage intellectual functioning with deficits in adaptive functioning initially manifested before age 22; (2) a valid IQ score of 60 to 70; and (3) a physical or other mental impairment imposing an additional and significant work-related limitation." *Kennedy v. Colvin*, 738 F.3d 1172, 1176 (9th Cir. 2013).

Defendant objects to the recommendations of the Magistrate Judge, arguing that Plaintiff has not satisfied Listing 12.05(C), there are conflicts in the record that must be resolved by the ALJ, and that the Court cannot make determinations based on the existing record. Specifically, Defendant contends that the ALJ failed to address the introductory paragraph of Listing 12.05(C), which requires a finding of significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested before age 22. This lack of analysis, according to Defendant, "warrants remand for further proceedings, not payment under Listing 12.05." Def.'s Objs. at 5. Defendant concedes the "ALJ erred regarding the third prong of Listing 12.05(C)—Plaintiff *does* have a qualifying 'additional' work-related impairment." *Id.* (emphasis added). The principal issue, therefore, is whether substantial evidence in the record supports a finding that Plaintiff's impairment manifested itself before age 22, warranting remand for payment of benefits.

### 1. Developmental Period Onset

To be found disabled, Plaintiff must demonstrate that his intellectual disability originated during the developmental period (prior to age twenty-two). As noted, the ALJ failed to address this issue. Based on the record, the Magistrate Judge found that "Plaintiff's intellectual functioning deficits in adaptive functioning initially manifested before Plaintiff turned 11[.]" R&R at 20. Based on the substantial evidence, the Court agrees with the R&R. The ALJ should have found that Plaintiff's impairment manifested itself during his developmental period.

A claimant may show early onset of impairment under Listing 12.05 through circumstantial evidence, including whether the claimant attended special education

classes, dropped out of school, and struggled with reading, writing, and arithmetic. *Maresh v. Barnhart*, 438 F.3d 897, 900 (8th Cir. 2006); *Pedro v. Astrue*, 849 F. Supp. 2d 1006, 1012 (D. Or. 2011). While clinical or IQ examinations may be helpful, they are not necessary to prove such deficits. *Luckey v. Dep't of Health & Human Servs.*, 890 F.2d 666, 668 (4th Cir. 1989); *Lewis v. Astrue,* No. C 06–6608 SI, 2008 WL 191415, *7 (N.D. Cal. Jan. 22, 2008).

Here, the record supports a finding that Plaintiff's significantly subaverage intelligence with deficits in adaptive functioning manifested during his developmental period. Plaintiff participated in special education since kindergarten and struggled considerably in reading, spelling, and arithmetic. AR 379–380. At age ten, Plaintiff underwent a psychological examination, in which poor academic achievement, extreme discrepancies in verbal and performance abilities, and limited adaptive behavior skills were noted. AR 381–382. At age 18, Plaintiff underwent a speech and language assessment. The results indicated a deficiency in everyday living skills, including conversational skills and use of basic concepts and vocabulary. AR 392. Though Plaintiff maintained employment during the developmental period, his employer (through a school-to-work program) raised concerns that Plaintiff had difficulty performing tasks and was not fully cognizant that he was on the job and not at school. AR 391.  At age 26, Plaintiff's full scale IQ score was 63.  *See Maresh,* 438 F.3d at 900 ("[A] person's IQ is presumed to remain stable over time in the absence of any evidence of a change in a claimant's intellectual functioning.") (Citation omitted).

Defendant argues that Plaintiff's showing of early poor academic performance is insufficient to establish early onset of deficits in adaptive functioning, especially because Plaintiff was able to work. Objs. at 6. Contrary to Defendant's position, a combination of poor academic performance and demonstrable developmental disabilities is sufficient to establish impairment during the developmental period. *See Maresh*, 438 F.3d at 900 (remanding for payment of benefits after ALJ failed to

address whether impairment manifested during the developmental period; holding, based on substantial evidence of poor academic performance and verbal IQ score of 70, combined with deficits in adaptive functioning at a young age, including frequent fights with other children, that ALJ should have found plaintiff's impairment manifested itself during his developmental period). Plaintiff has not only shown deficiency in academic performance, but also deficiency in everyday skills. AR 381–382, 392. Plaintiff has held two positions of employment. His first position was as a laundry laborer while employed through a school-to-work program. The record indicates that at this job Plaintiff socialized too much, could not focus on work, and often did not realize he was at work. AR 391. His second position was at a Navy Exchange, where he had disciplinary actions taken against him and his performance often was noted as "significantly deficient". AR 344–367. The record also reveals that Plaintiff's past employment was more akin to "accommodated employment" and not competitive employment, which further supports Plaintiff's request for benefits. AR at 115–16; *See Pedro*, 849 F. Supp. 2d at 1013–1014 (finding accommodated employment situations to support a finding of disability).

Defendant also points to Plaintiff's ability to order simple meals, dial 911, heat up food, control his anger, bathe and dress himself, and understand the value of money as evidence that Plaintiff has some basic abilities consistent with normal adaptive abilities. Objs. at 5:22–6:3. However, being able to conduct daily activities is not inconsistent with mental retardation. *Pedro*, 849 F. Supp. 2d at 1014; *Huber v. Astrue*, No. CIV–10–8043, 2010 WL 4684021, *4 (D. Ariz. Nov. 12, 2010).

Defendant's argument is similar to one rejected by the court in *Pedro*. There, though the defendant had a drivers' license, lived independently, handled her own hygiene, and took care of children, the court nevertheless held that such skills were not inconsistent with mental retardation. *Pedro*, 849 F. Supp. 2d at 1014. The *Pedro* court emphasized that a claimant can satisfy Listing 12.05(C) without demonstrating disabling or severe mental impairment. *Pedro*, 849 F. Supp. 2d at 1014 (citing

*Gomez*, F. Supp. 2d at 1057). While the skills Defendant references are necessary to prove normal adaptive functioning, the existence of such skills is not inconsistent with a finding of mental retardation during the developmental period. There is no evidence that Plaintiff's skills regressed *after* the age of twenty-two, which could rebut evidence of childhood deficiencies. The Listing requires only a showing of deficits in intellectual and adaptive functioning during the developmental period, not a showing that Plaintiff was unable to conduct daily activities. *Pedro*, 849 F. Supp. 2d at 1014. Because there is substantial evidence of subaverage intellectual functioning with deficits in adaptive functioning during the developmental period, the Court adopts the R&R. The ALJ should have found that Plaintiff's impairment manifested itself during his developmental period.

### 2. Unresolved Conflicting Evidence

Defendant further objects to the R&R on grounds that there is an unresolved conflict between the reports of Dr. Shore and Dr. Valette. However, the record reveals that the ALJ credited Dr. Shore's testimony and discredited Dr. Valette's, which resolves any contradiction.

The ALJ is responsible for determining credibility and resolving conflicts in medical testimony. *Magallanes*, 881 F.2d at 750. When there are multiple reasonable interpretations, the court must uphold the ALJ's reasonable interpretation. *Gallant*, 753 F.2d at 1453. Since the ALJ is in the best position to make credibility determinations and draw conclusions about witness testimony, his findings will not be disturbed. *Craft v. Shalala*, No. 92-36896, 1994 U.S. App. LEXIS 5509, *8 (9th Cir. Mar. 18, 1994).

Dr. Shore found that Plaintiff suffers from a learning disorder and mild mental retardation and concluded that he is capable of work characterized by simple repetitive tasks. AR 17–18. The ALJ afforded Dr. Shore's examination great weight because it was supported by objective findings and observations. *Id.* Dr. Valette concluded that Plaintiff suffered from a learning disorder, but that it would not

inhibit his ability to work. AR 19. The ALJ found Dr. Valette's report less credible because it was internally inconsistent and understated the severity of Plaintiff's learning disorder. *Id.* Defendant contends that the extent of Plaintiff's intellectual disability and its affect on his ability to work cannot be determined on the record because of the unresolved conflict between Dr. Shore and Dr. Vallette. Objs. at 6:13–22. But the ALJ elucidates his position, writing that he ascribes "little weight" to Dr. Vallette's assessment and does not believe Plaintiff's learning disorder is so *de minimis* as to merit no restriction being assigned. AR 19. Therefore, Dr. Shore's conclusion that Plaintiff is capable of work involving simple repetitive tasks was credited over Dr. Valette's assessment that provided no restrictions. In light of the ALJ's credibility determinations, there is no unresolved conflict between Dr. Shore and Dr. Valette's testimony.

### 3. Additional Impairment

Although Defendant does not object to the Magistrate Judge's finding that the ALJ erred by failing to find an additional impairment, the Court has reviewed the ALJ's decision *de novo*. *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012). Upon review, the Court finds that the ALJ's legal conclusion that Plaintiff was not disabled because he did not demonstrate an additional impairment beyond mental retardation was erroneous. Based on the ALJ's findings at step two of the sequential analysis, Plaintiff satisfies the third prong of Listing 12.05(C) that there be an additional impairment.

"[A]n impairment imposes a significant work-related limitation of function when its effect on a claimant's ability to perform basic work activities is more than slight or minimal." *Fanning v. Bowen*, 827 F.2d 631, 633 (9th Cir. 1987). "If an ALJ finds an impairment to be "severe" in step Two of the disability analysis, that impairment necessarily has more than a slight or minimal effect on claimant's ability to perform basic work activities." *Stokes v. Astrue*, No. CV 09-1264-PK, 2011 WL 285224, at *10 (D. Or. Jan. 4, 2011). A finding of severe impairment at step two of

the sequential analysis is therefore a *per se* finding that satisfies the third prong of 12.05(C). *See, e.g. Fanning*, 827 F.2d at 633; *Campbell v. Astrue*, No. 1:09-CV-00465 GSA, 2011 WL 444783, at *18 (E.D. Cal. Feb. 8, 2011); *Knipe v. Colvin*, No. 3:14-CV-01533-SI, 2015 U.S. Dist. LEXIS 172450, *29–*30 (D. Or. Dec. 29, 2015).

At step two of the sequential evaluation, the ALJ determined that Plaintiff has a learning disorder, bilateral pes planus, chondromalacia patella of the right knee, Achilles tendonitis of the right ankle and obesity. AR 13. He concluded that these impairments, "established by the medical evidence . . . are 'severe' within the meaning of the Regulations." AR 13–14. This finding satisfies Listing 12.05(C)'s third prong that Plaintiff have a physical or other mental impairment that imposes significant work-related limitation of function. *Campbell*, 2011 WL 444783 at *18. Accordingly, Plaintiff is disabled within the meaning of 12.05(C) and step three of the sequential analysis.

### 4.  Remand for Benefits

Defendant objects to the Magistrate Judge's findings and contends that under *Treichler v. Commissioner of Social Sec. Admin.*, 775 F.3d 1090, 1103 (9th Cir. 2014), the Court cannot determine whether Plaintiff demonstrated subaverage intellectual functioning with deficits in adaptive functioning prior to age twenty-two. Objs. at 5:13. Defendant's interpretation of *Treichler* overstates the principle of the case.

In *Treichler*, the court recounted the credit-as-true rule and described how it applies to cases involving conflicting records or improperly disregarded evidence. *Id.* at 1102. The *Treichler* court recognized that the credit-as-true rule can justify departure from the ordinary remand rule, which provides that courts generally remand for further proceedings. *Id.* at 1099–1100. The rule states that remand for award of benefits is appropriate where:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand.

*Garrison v. Colvin*, 759 F.3d 995, 1020 (9th Cir. 2014). Though the *Treichler* court wrote that a court abuses its discretion if it remands for an award of benefits when factual issues remain unresolved, it noted that it is appropriate for a court to remand for benefits when it is clear from the record that the ALJ would be required to award benefits. *Id.* at 1100, 1101 n. 5. Remanding a case for further proceedings is appropriate when doing so would allow the ALJ to address unresolved factual conflicts. *Treichler*, 775 F.3d at 1103–04. However, when, as here, the record is fully developed and additional proceedings would only serve to delay the receipt of benefits, remand for an award of benefits is appropriate. *Varney v. Sec'y of Health and Human Services*, 859 F.2d 1396, 1399 (9th Cir. 1988); *Benecke v. Barnhart*, 379 F.3d 587, 595 (9th Cir. 2004). Ultimately, the decision whether to remand for further proceedings or to remand for an award of benefits is within the discretion of the court. *Sprague v. Bowen*, 812 F.2d 1226, 1232 (9th Cir. 1987).

Here, the ALJ erred by failing to address the introductory paragraph of Listing 12.05(C) and by finding the third prong of 12.05(C) is unsatisfied. The ALJ's conclusion at step two of the sequential evaluation process is a *per se* finding that the third prong of Listing 12.05(C) is satisfied. Although the ALJ did not address the first prong (introductory paragraph) of Listing 12.05(C), substantial evidence satisfies that prong. Thus, the record is fully developed and Plaintiff is deemed disabled under Listing 12.05(C) and at step three of the sequential evaluation. Remanding the case for further proceedings would serve no useful purpose and would delay Plaintiff's receipt of benefits. Accordingly, the Court departs from the ordinary remand rule and instead remands for an award of benefits.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

### III.

### CONCLUSION

Because substantial evidence demonstrates Plaintiff meets Listing 12.05(C) and is disabled, the ALJ's contrary finding is erroneous. Accordingly, the Court overrules Defendant's objections to the R&R and adopts the R&R, grants Plaintiff's motion and denies Defendant's cross-motion, and remands this matter to the ALJ for an award of benefits.

**IT IS SO ORDERED.**

Dated:  July 29, 2016

The Honorable Dana M. Sabraw
United States District Judge